UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CASSANDRA BRACKLEY, on behalf of herself and all others similarly situated, | : | Case No. 16 Civ. 288 |
| Plaintiff, | : | CLASS AND COLLECTIVE ACTION COMPLAINT |
| - against - | : | |
| RED ROBIN GOURMET BURGERS, INC., RED ROBIN INTERNATIONAL, INC, SWAN CONCEPTS, INC., FAYETTEVILLE LLC, RR HALFMOON LLC, RR LATHAM LLC, RR POUGHKEEPSIE LLC, JOHN A. SWAN, JR., an individual, | : | |
| Defendants. | : | |

Plaintiff Cassandra Brackley, on behalf of herself and all others similarly situated, by and through her attorneys Shulman Kessler LLP, complaining of the Red Robin Gourmet Burgers, Inc., Red Robin International, Inc. (collectively, "Corporate Defendants"), RR Fayetteville LLC, RR Halfmoon LLC, RR Latham LLC, RR Poughkeepsie LLC, Swan Concepts, Inc., and John A. Swan, Jr., (collectively "Defendants) alleges as follows:

## INTRODUCTION

1. Defendants operate a chain of casual dining restaurants throughout New York State known as Red Robin Gourmet Burgers (a.k.a. Red Robin Gourmet Burgers and Brews) ("Red Robin"). Defendants employed Plaintiff, and those similarly situated to her, as a tipped employee – a Server – at their restaurants. Defendants rely on a "tip credit" to pay Servers the "tipped minimum wage" as opposed to the full minimum wage. Defendants, however, require Servers to share their tipped income with expeditors ("Expos"), who do not customarily and regularly receive tips from customers. Defendants also failed to provide Servers with proper notice of the tipped minimum wage and its requirements. And, Defendants require Servers to

spend over 20 percent of their time performing work unrelated to serving customers ("side work"). As such, Defendants tip-sharing policy violates the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. § 201, *et seq.* and the New York Labor Law ("NYLL" or "N.Y. Lab. Law") and appropriate rules and regulations.

2. Plaintiff brings this action on behalf of herself and all similarly situated current and former Servers who elect to opt-in to this action pursuant to the FLSA, specifically the collective action provision of 29 U.S.C. § 216(b), to remedy Defendants' violations of the wage-and-hour provisions of the FLSA. At the earliest time possible, Plaintiff seeks permission to give notice of this action pursuant to 29 U.S.C. § 216(b) to all persons who are presently, or have at any time during the three years immediately preceding the filing of this action, worked for Defendants.

3. Plaintiff also brings this action on behalf of herself and all similarly situated current and former Servers pursuant to the Federal Rule of Civil Procedure 23 to remedy violations of NYLL Article 6 § 190, *et seq.*, and Article 19 § 650, *et seq.*, and the supporting New York State Department of Labor regulations.

4. The Corporate Defendants, own, operate, and franchise over 500 Red Robins across North America.

5. According to Red Robins International, Inc.'s website, there are 16 Red Robins in New York State, including at the following locations:

a. 4080 Maple Road, Amherst, New York 14226 ("Amherst Restaurant");

b. 200 Baychester Drive, #118B, Bronx, New York 10475 ("Bronx Restaurant");

c. 160 Township Boulevard, Camillus, New York 13031 ("Camillus Restaurant");

d. 125 Old Country Road, Carle Place, New York 11514 ("Carle Place Restaurant");

e. 610 Towne Drive, Fayetteville, New York 13066 ("Fayetteville Towne Center Restaurant");

f. 104 Greece Ridge Center Drive, Greece, New York 14626 ("Greece Restaurant");

g. 1 Halfmoon Crossing, Halfmoon, New York 12065 ("Crossing Restaurant");

h. 1720 County Road 64, Horseheads, New York 14845 ("Horseheads Restaurant");

i. 880 Loudon Road, Latham, New York 12110 ("Latham Restaurant");

j. 3460 Amelia Drive, Orchard Park, New York 14127 ("Orchard Park Restaurant");

k. 2511 South Road, Route 9, Poughkeepsie, New York 12601 ("Oakwood Commons Plaza Restaurant");

l. 740 Jefferson Road, Rochester, New York 14623 ("Henrietta Restaurant");

m. 2655 Richmond Avenue, Staten Island, New York 10314 ("Staten Island Mall Restaurant");

n. 905 Holt Road, Webster, New York 14580 ("Webster Restaurant");

o. 1035 W. Montauk Highway, West Babylon, New York 11702 ("West Babylon Restaurant"); and

p. 1000 Palisades Center Drive; A-403, West Nyack, New York 10993 ("Nyack Restaurant").[1]

6. In or about March 2004, Corporate Defendants announced their partnership with Swan Concepts, Inc., and John A. Swan, Jr., ("Swan Defendants") to open Red Robins in New York State.[2]

---

[1] Red Robin Locations, http://www.redrobin.com/locations (last accessed Dec. 28, 2015).

[2] Business Wire, Red Robin Gourmet Burgers Expands in the Northeast; New franchisee to open five locations in Upstate New York (Mar. 25, 2004), http://www.businesswire.com/

7. Upon information and belief, from December 2009 through at least March 2014, Swan Defendants operated four franchised Red Robins in New York State: the Fayettville Towne Center, Crossing, Latham, and Oakwood Commons Plaza Restaurants.

8. Upon information and belief, Swan Defendants utilized four subsidiaries to operate these Red Robins: RR Fayetteville LLC, RR Halfmoon LLC, RR Latham LLC, and RR Poughkeepsie LLC (collectively, "Franchised Defendants").

9. In or around March 2014, Red Robin International, Inc. acquired the Fayettville Towne Center, Crossing, Latham, and Oakwood Commons Plaza Restaurants from Swan Defendants.[3]

10. At all times relevant, Defendants have paid their Servers at a tipped minimum wage rate less than the full minimum wage rate for non-tipped workers.

11. Defendants, however, have not satisfied the strict requirements under the FLSA or the NYLL that would allow them to pay a reduced minimum wage (i.e. - take a "tip credit").

12. Specifically, Defendants maintain a policy and practice requiring their Servers to share tips with the Expos. Expos are not entitled to share in these tips under the FLSA or the NYLL because they have no little to no direct contact or interaction with customers.

13. Additionally, Defendants require their Servers to perform to perform substantial side work, which exceeds 20 percent of their time working for Defendants.

---

news/home/20040325005301/en/Red-Robin-Gourmet-Burgers-Expands-Northeast-franchisee (last accessed Dec. 28, 2015).

[3] Restaurant Magazine, Red Robin Announces Acquisition of Four Franchised Restaurants in New York State (Mar. 26, 2014), http://www.restaurantmagazine.com/red-robin-announces-acquisition-of-four-franchised-restaurants-in-new-york-state/ (last accessed Dec. 28, 2015).

**JURISDICTION & VENUE**

14. Jurisdiction of the Court over this controversy is based upon, 29 U.S.C. § 201, *et seq.*, 28 U.S.C. §§ 1331 and 1337.

15. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

16. Defendants operate restaurants located at 125 Old Country Road, Carle Place, New York 11514, 1035 W. Montauk Highway, West Babylon, New York 11702, and 2655 Richmond Avenue, Staten Island, New York 10314.

17. Accordingly, this action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

**THE PARTIES**

***Plaintiff Cassandra Brackley***

18. Cassandra Brackley is a resident of the County of Saratoga, State of New York.

19. At all times relevant to the Complaint, Cassandra Brackley was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

20. At all times relevant, Cassandra Brackley was employed by Defendants as a Tipped Employee, specifically a Server.

21. Cassandra Brackley has expressed her consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b). (*See* Exhibit A).

***Defendant Red Robin Gourmet Burgers, Inc.***

22. Upon information and belief, Red Robin Gourmet Burgers, Inc. was and still is a foreign corporation, authorized to do business pursuant to the laws of the State of New York.

23. Upon information and belief, Red Robin Gourmet Burgers, Inc.'s principal place of business is located at 6312 South Fiddlers Green Circle, 200n, Greenwood Village, Colorado 80111.

24. Upon information and belief, Red Robin Gourmet Burgers, Inc. was and still is in the restaurant business.

25. Upon information and belief, Red Robin Gourmet Burgers, Inc. owns and/or operates Red Robin International, Inc.

26. Upon information and belief, Red Robin Gourmet Burgers, Inc. is the parent company of Red Robin International, Inc.

27. Upon information and belief, Red Robin Gourmet Burgers, Inc. operates its Red Robins through Red Robin International, Inc., and its other operating subsidiaries.[4]

28. At all times hereinafter mentioned, Red Robin Gourmet Burgers, Inc. was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

29. At all times hereinafter mentioned, the activities of Red Robin Gourmet Burgers, Inc. constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

30. Upon information and belief, Red Robin Gourmet Burgers, Inc. maintains control, oversight, and direction over its operations and employment practices.

31. At all times hereinafter mentioned, Red Robin Gourmet Burgers, Inc. employed employees, including Plaintiff, who regularly engaged in commerce or in the production of

---

[4] *See* Red Robin Gourmet Burgers, Inc., Form 10-K, at Item 1 (Feb. 20, 2015), http://www.sec.gov/Archives/edgar/data/1171759/000162828015000884/rrgb-20141228x10k.htm (last accessed Dec. 28, 2015).

goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

*32.* Red Robin Gourmet Burgers, Inc.'s annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***Defendant Red Robin International, Inc.***

33. Upon information and belief, Red Robin International, Inc. was and still is a foreign corporation, authorized to do business pursuant to the laws of the State of New York.

34. Upon information and belief, Red Robin Gourmet Burgers, Inc.'s principal place of business is located at 6312 South Fiddlers Green Circle, 200n, Greenwood Village, Colorado 80111.

35. Upon information and belief, Red Robin International, Inc. was and still is in the restaurant business.

36. Upon information and belief, Red Robin International, Inc. is a wholly-owned subsidiary of Red Robin Gourmet Burgers, Inc.

37. At all times hereinafter mentioned, Red Robin International, Inc. was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

38. At all times hereinafter mentioned, the activities of Red Robin International, Inc. constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

39. Upon information and belief, Red Robin International, Inc. maintains control, oversight, and direction over its operations and employment practices.

40. At all times hereinafter mentioned, Red Robin International, Inc. employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

41. Red Robin International, Inc.'s annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***The Corporate Defendants***

42. The Corporate Defendants constitute a unified operation.

43. The Corporate Defendants constitute a common enterprise.

44. The Corporate Defendants have interrelated operations.

45. The Corporate Defendants have common management.

46. The Corporate Defendants have a centralized control of labor relations.

47. The Corporate Defendants have common ownership.

48. The Corporate Defendants share employees.

49. The Corporate Defendants commingled funds with each other.

50. The Corporate Defendants share the same physical addresses in the State of New York.

51. The Corporate Defendants constitute a single employer.

52. The Corporate Defendants constitute an integrated enterprise.

53. At all relevant times, the Corporate Defendants maintain control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

54. The Corporate Defendants apply the same employment policies, practices, and procedures to all Servers, including policies, practices, and procedures with respect to payment of the minimum wage and tip sharing.

***Defendant Swan Concepts, Inc.***

55. Upon information and belief, Swan Concepts, Inc. was a foreign corporation, authorized to do business pursuant to the laws of the State of New York.

56. Upon information and belief, Swan Concepts, Inc.'s principal place of business was located at 54 Danbury Road #313, Ridgefield, Connecticut 06877.

57. Upon information and belief, at all time relevant to the Complaint, Swan Concepts, Inc. was in the restaurant business.

58. Upon information and belief, Swan Concepts, Inc. owned and/or operated RR Fayetteville LLC.

59. Upon information and belief, Swan Concepts, Inc. owned and/or operated RR Halfmoon LLC.

60. Upon information and belief, Swan Concepts, Inc. owned and/or operated RR Latham LLC.

61. Upon information and belief, Swan Concepts, Inc. owned and operated RR Poughkeepsie LLC.

62. At all times hereinafter mentioned, Swan Concepts, Inc. was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

63. At all times hereinafter mentioned, the activities of Swan Concepts, Inc. constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

64. Upon information and belief, Swan Concepts, Inc. maintains control, oversight, and direction over its operations and employment practices.

65. At all times hereinafter mentioned, Swan Concepts, Inc. employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling, or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

66. At all times hereinafter mentioned, Swan Concepts, Inc.'s annual gross volume of business was not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***Defendant RR Fayetteville LLC***

67. Upon information and belief, RR Fayetteville LLC was a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

68. Upon information and belief, RR Fayetteville LLC's principal place of business was located at 610 Towne Drive, Fayetteville, New York 13066 – the Fayetteville Towne Center Restaurant.

69. Upon information and belief, at all time relevant to the Complaint, RR Fayettville LLC was in the restaurant business.

70. Upon information and belief, at all times relevant to the Complaint, RR Fayetteville LLC did business as Red Robin.

71. Upon information and belief, RR Fayetteville LLC was a wholly-owned subsidiary of Swan Concepts, Inc.

72. At all times hereinafter mentioned, RR Fayetteville LLC was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

73. At all times hereinafter mentioned, the activities of RR Fayetteville LLC constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

74. Upon information and belief, RR Fayetteville LLC maintained control, oversight, and direction over its operations and employment practices.

75. At all times hereinafter mentioned, RR Fayetteville LLC employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

76. At all times hereinafter mentioned, RR Fayetteville LLC's annual gross volume of business was not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***Defendant RR Halfmoon LLC***

77. Upon information and belief, RR Halfmoon LLC was a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

78. Upon information and belief, RR Halfmoon LLC's principal place of business was located at 1 Halfmoon Crossing, Halfmoon, NY 12065 – the Crossings Restaurant.

79. Upon information and belief, at all times relevant to the Complaint, RR Halfmoon LLC was in the restaurant business.

80. Upon information and belief, at all times relevant to the Complaint, RR Halfmoon LLC did business as Red Robin.

81. Upon information and belief, RR Halfmoon LLC was a wholly-owned subsidiary of Swan Concepts, Inc.

82. At all times hereinafter mentioned, RR Halfmoon LLC was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

83. At all times hereinafter mentioned, the activities of RR Halfmoon LLC constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

84. Upon information and belief, RR Halfmoon LLC maintained control, oversight, and direction over its operations and employment practices.

85. At all times hereinafter mentioned, RR Halfmoon LLC employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

86. At all times hereinafter mentioned, RR Halfmoon LLC's annual gross volume of business was not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***Defendant RR Latham LLC***

87. Upon information and belief, RR Latham LLC was a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

88. Upon information and belief, RR Latham LLC's principal place of business was located at 880 Loudon Rd, Latham, New York 12110 – the Latham Restaurant.

89. Upon information and belief, at all times relevant to the Complaint, RR Lathaam LLC was in the restaurant business.

90. Upon information and belief, at all times relevant to the Complaint, RR Latham LLC did business as Red Robins.

91. Upon information and belief, RR Latham LLC was a wholly-owned subsidiary of Swan Concepts, Inc.

92. At all times hereinafter mentioned, RR Latham LLC was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

93. At all times hereinafter mentioned, the activities of RR Latham LLC constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

94. Upon information and belief, RR Latham LLC maintained control, oversight, and direction over its operations and employment practices.

95. At all times hereinafter mentioned, RR Latham LLC employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

96. At all times hereinafter mentioned, RR Latham LLC's annual gross volume of business was not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***Defendant RR Poughkeepsie LLC***

97. Upon information and belief, RR Latham LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

98. Upon information and belief, RR Latham LLC's principal place of business was located at 2511 South Road, Route 9, Poughkeepsie, New York 12601 – the Oakwood Commons Plaza Restaurant.

99. Upon information and belief, at all times relevant to the Complaint, RR Halfmoon LLC was in the restaurant business.

100. Upon information and belief, at all times relevant to the Complaint, RR Latham LLC did business as Red Robins.

101. Upon information and belief, RR Latham LLC was a wholly-owned subsidiary of Swan Concepts, Inc.

102. At all times hereinafter mentioned, RR Latham LLC was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

103. At all times hereinafter mentioned, the activities of RR Latham LLC constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

104. Upon information and belief, RR Latham LLC maintained control, oversight, and direction over its operations and employment practices.

105. At all times hereinafter mentioned, RR Latham LLC employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

106. At all times hereinafter mentioned, RR Latham LLC's annual gross volume of business was not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***The Franchised Defendants***

107. The Franchised Defendants constituted a unified operation.

108. The Franchised Defendants constituted a common enterprise.

109. The Franchised Defendants had interrelated operations.

110. The Franchised Defendants had common management.

111. The Franchised Defendants had a centralized control of labor relations.

112. The Franchised Defendants had common ownership.

113. The Franchised Defendants shared employees.

114. The Franchised Defendants commingled funds with each other.

115. The Franchised Defendants shared the same physical addresses in the State of New York.

116. The Franchised Defendants constitute a single employer.

117. The Franchised Defendants constitute an integrated enterprise.

118. At all relevant times, the Franchised Defendants maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

119. The Franchised Defendants applied the same employment policies, practices, and procedures to all Servers, including policies, practices, and procedures with respect to payment of the minimum wage and tip sharing.

120. Upon information and belief, upon acquiring the Franchised Defendants' business, the Corporate Defendants substantially continued the Franchised Defendants' business operations.

121. Upon information and belief, upon acquiring the Franchised Defendants' business, the Corporate Defendants used the same facilities to operate those Red Robins.

122. Upon information and belief, upon acquiring the Franchised Defendants' business, the Corporate Defendants retained the Franchised Defendants' employees.

123. Specifically, the Corporate Defendants continued to employ Plaintiff after acquiring the Franchised Defendants' business.

124. Upon information and belief, upon acquiring the Franchised Defendants' business, the Corporate Defendants maintained the same jobs.

125. Upon information and belief, upon acquiring the Franchised Defendants' business, the Corporate Defendants employed the same supervisors.

126. Specifically, the Corporate Defendants continued to employ Plaintiff's managers after acquiring the Franchised Defendants' business.

127. Upon information and belief, upon acquiring the Franchised Defendants' business, the Corporate Defendants used the same restaurant equipment and methods to serve the restaurants' customers.

128. Upon information and belief, upon acquiring the Franchised Defendants' business, the Corporate Defendants offered the same services as the Franchised Defendants. That is, the Corporate Defendants continued to operate the restaurants as Red Robins, offering the same food, drinks, and ambiance.

129. Upon information and belief, when the Corporate Defendants acquired Franchised Defendants' business the Corporate Defendants had actual or constructive notice of the wage-and-hour violations alleged in this Complaint.

130. Upon information and belief, the Franchised Defendants are unable to provide complete relief to Plaintiff's and all other Servers.

131. At all times hereinafter mentioned, the Corporate Defendants were "successors" to the Franchised Defendants.

***Defendant John A. Swan, Jr.***

132. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. owns and/or operates Swan Concepts, Inc.

133. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. is the President of Swan Concepts, Inc.

134. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. is the Vice-President of Swan Concepts, Inc.

135. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. is a shareholder of Swan Concepts, Inc.

136. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. is a corporate officer of Swan Concepts, Inc.

137. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. is the Chief Executive Officer of Swan Concepts, Inc.

138. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. is an agent of Swan Concepts, Inc.

139. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. has the authority over personnel decisions for Swan Concepts, Inc.

140. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. has the authority over payroll decisions for Swan Concepts, Inc.

141. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. supervises employees of the Swan Concepts, Inc.

142. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. has the authority to hire and fire employees for Swan Concepts, Inc.

143. John A. Swan, Jr. has the power to make binding decisions for Swan Concepts, Inc.

144. John A. Swan, Jr. has the power to transfer the assets or liabilities of Swan Concepts, Inc.

145. John A. Swan, Jr. has the power to declare bankruptcy on behalf of Swan Concepts, Inc.

146. John A. Swan, Jr. has the power to enter into contracts on behalf of Swan Concepts, Inc.

147. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. owned and/or operated RR Fayetteville LLC.

148. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the President of RR Fayetteville LLC.

149. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the Vice-President of RR Fayetteville LLC.

150. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was a shareholder of RR Fayetteville LLC.

151. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was a corporate officer of RR Fayetteville LLC.

152. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the Chief Executive Officer of RR Fayetteville LLC.

153. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was an agent of RR Fayetteville LLC.

154. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority over personnel decisions for RR Fayetteville LLC.

155. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority over payroll decisions for RR Fayetteville LLC.

156. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. supervised employees of the RR Fayetteville LLC.

157. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority to hire and fire employees for RR Fayetteville LLC.

158. John A. Swan, Jr. had the power to make binding decisions for RR Fayetteville LLC.

159. John A. Swan, Jr. had the power to transfer the assets or liabilities of RR Fayetteville LLC.

160. John A. Swan, Jr. had the power to declare bankruptcy on behalf of RR Fayetteville LLC.

161. John A. Swan, Jr. had the power to enter into contracts on behalf of RR Fayetteville LLC.

162. Upon information and belief, John A. Swan, Jr. was listed at the principal for the Fayetteville Towne Center Restaurant on the New York State Liquor License.[5]

163. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. owned and/or operated RR Halfmoon LLC.

164. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the President of RR Halfmoon LLC.

165. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the Vice-President of RR Halfmoon LLC.

166. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was a shareholder of RR Halfmoon LLC.

167. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was a corporate officer of RR Halfmoon LLC.

168. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the Chief Executive Officer of RR Halfmoon LLC.

169. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was an agent of RR Halfmoon LLC.

170. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority over personnel decisions for RR Halfmoon LLC.

[5] New York State Liquor Authority Public Query – Results, https://www.tran.sla.ny.gov/servlet/ApplicationServlet?pageName=com.ibm.nysla.data.publicquery.PublicQuerySuccessfulResultsPage&validated=true&serialNumber=2605244&licenseType=OP (last accessed Dec. 28, 2015).

171. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority over payroll decisions for RR Halfmoon LLC.

172. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. supervised employees of the RR Halfmoon LLC.

173. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority to hire and fire employees for RR Halfmoon LLC.

174. John A. Swan, Jr. had the power to make binding decisions for RR Halfmoon LLC.

175. John A. Swan, Jr. had the power to transfer the assets or liabilities of RR Halfmoon LLC.

176. John A. Swan, Jr. had the power to declare bankruptcy on behalf of RR Halfmoon LLC.

177. John A. Swan, Jr. had the power to enter into contracts on behalf of RR Halfmoon LLC.

178. Upon information and belief, John A. Swan, Jr. was listed at the principal for the Crossings Restaurant on the New York State Liquor License.[6]

179. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. owned and/or operated RR Latham LLC.

180. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the President of RR Latham LLC.

---

[6] New York State Liquor Authority Public Query – Results, https://www.tran.sla.ny.gov/servlet/ApplicationServlet?pageName=com.ibm.nysla.data.publicquery.PublicQuerySuccessfulResultsPage&validated=true&serialNumber=2121442&licenseType=OP (last accessed Dec. 28, 2015).

181. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the Vice-President of RR Latham LLC.

182. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was a shareholder of RR Latham LLC.

183. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was a corporate officer of RR Latham LLC.

184. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the Chief Executive Officer of RR Latham LLC.

185. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. \was an agent of RR Latham LLC.

186. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority over personnel decisions for RR Latham LLC.

187. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority over payroll decisions for RR Latham LLC.

188. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. supervised employees of the RR Latham LLC.

189. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority to hire and fire employees for RR Latham LLC.

190. John A. Swan, Jr. had the power to make binding decisions for RR Latham LLC.

191. John A. Swan, Jr. had the power to transfer the assets or liabilities of RR Latham LLC.

192. John A. Swan, Jr. had the power to declare bankruptcy on behalf of RR Latham LLC.

193. John A. Swan, Jr. had the power to enter into contracts on behalf of RR Latham LLC.

194. Upon information and belief, John A. Swan, Jr. was listed at the principal for the Latham Restaurant on the New York State Liquor License.[7]

195. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. owned and/or operated RR Poughkeepsie LLC.

196. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the President of RR Poughkeepsie LLC.

197. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the Vice-President of RR Poughkeepsie LLC.

198. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was a shareholder of RR Poughkeepsie LLC.

199. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was a corporate officer of RR Poughkeepsie LLC.

200. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was the Chief Executive Officer of RR Poughkeepsie LLC.

201. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. was an agent of RR Poughkeepsie LLC.

202. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority over personnel decisions for RR Poughkeepsie LLC.

---

[7] New York State Liquor Authority Public Query – Results, https://www.tran.sla.ny.gov/servlet/ApplicationServlet?pageName=com.ibm.nysla.data.publicquery.PublicQuerySuccessfulResultsPage&validated=true&serialNumber=2126655&licenseType=OP (last accessed Dec. 28, 2015).

203. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority over payroll decisions for RR Poughkeepsie LLC.

204. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. supervised employees of the RR Poughkeepsie LLC.

205. Upon information and belief, and at all times hereinafter mentioned, John A. Swan, Jr. had the authority to hire and fire employees for RR Poughkeepsie LLC.

206. John A. Swan, Jr. had the power to make binding decisions for RR Poughkeepsie LLC.

207. John A. Swan, Jr. had the power to transfer the assets or liabilities of RR Poughkeepsie LLC.

208. John A. Swan, Jr. had the power to declare bankruptcy on behalf of RR Poughkeepsie LLC.

209. John A. Swan, Jr. had the power to enter into contracts on behalf of RR Poughkeepsie LLC.

210. Upon information and belief, John A. Swan, Jr. was listed at the principal for the Oakwood Commons Plaza Restaurant on the New York State Liquor License.[8]

211. At all times hereinafter mentioned, John A. Swan, Jr. was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

---

[8] New York State Liquor Authority Public Query – Results, https://www.tran.sla.ny.gov/servlet/ApplicationServlet?pageName=com.ibm.nysla.data.publicquery.PublicQuerySuccessfulResultsPage&validated=true&serialNumber=2140867&licenseType=OP (last accessed Dec. 28, 2015).

## FLSA COLLECTIVE ACTION CLAIMS

212. Upon information and belief, there are approximately more than 100 current and former Servers that are similarly situated to Plaintiff who were paid less than the minimum wage.

213. Plaintiff sues on her own behalf and as the class representative (hereinafter, the "Class Representative") and brings the First Cause of Action on behalf of herself and all similarly situated persons who have worked for Defendants as Servers and elect to opt-in to this action.

214. The Class Representative represents other Servers, and is acting on behalf of the interests of those Servers, as well as her own interests in bringing this action.

215. The Class Representative seeks to proceed as a collective action with regard to the First Cause of Action, pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following class of persons:

> All Servers who are currently or have been employed by Defendants in the State of New York and were paid less than the hourly minimum wage at any time during the three years prior to the filing of their respective consent forms (hereinafter, the "FLSA Collective").

216. Defendants were aware or should have been aware that the law required them to pay non-exempt employees, including Plaintiff and the FLSA Collective, the minimum wage for all workhours Defendants suffered or permitted them to work. Upon information and belief, Defendants applied the same unlawful policies and practices to its Servers throughout all of the restaurants located in New York State.

217. The FLSA Collective is readily identifiable and locatable through use of the Defendants' records. The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the

FLSA Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

**FEDERAL RULE OF CIVIL PROCEDURE RULE 23**
**CLASS ALLEGATIONS**

218. The Class Representative brings the Second Cause of Action on her own behalf and as a class action, on behalf of those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b) (the "New York Class"). The New York Class is defined as:

> All Servers who are currently or have been employed by Defendants and were paid less than the minimum wage, at any time within the six years prior to the filing of the Complaint through the entry of judgment in this matter (the "New York Class Period").

219. The persons in the New York Class are so numerous that joinder of all members is impracticable. Although, the precise number of such persons is unknown, and facts upon which the calculation of that number are presently within the sole control of the Defendants, there are approximately more than 100 members of the New York Class during the New York Class Period.

220. There are questions of law and fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to:

a. Whether Respondent employed the Class Representative and the New York Class within the meaning of N.Y. Lab. Law §190, *et. seq.*;

b. Whether Defendants unlawfully failed to pay the minimum wage in violation of and within the meaning of N.Y. Lab. Law §190, *et. seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. §§ 146-1.2, 146-1.3;

c. Whether Defendants unlawfully required the Class Representative and the New York Class to share their tips with employees who were ineligible to receive shared tips in accordance with New York State Department of Labor Regulations, 12 N.Y.C.R.R. §§ 146-1.3, 146-2.14, 146-2.15;

d. Whether Defendants had a policy or practice of failing to provide adequate notice of their payment of a reduced minimum wage to the Class Representative and the New York Class;

e. Whether Defendants had a policy or practice of requiring the Class Representative and the New York Class to perform substantial amounts of side work, exceeding 20 percent of their workhours, 12 N.Y.C.R.R. § 146-2.9;

f. Whether Defendants failed to keep accurate time and payroll records for the Class Representative and the New York Class;

g. Whether Defendants' policy of failing to pay the minimum wage was instituted willfully or with reckless disregard of the law;

h. Whether Defendants' policy of distributing Servers' tipped income to employees that do not customarily and regularly receive tips from customers was instituted willfully or with reckless disregard of the law;

i. Whether Defendants' policy failing to provide adequate notice of their payment of a reduced minimum wage was instituted willfully or with reckless disregard of the law;

j. The proper measure of damages sustained by the Class Representative and the New York Class; and

k. Whether Defendants should be enjoined from such violations in the future.

221. The Class Representative fairly and adequately protects the interests of the New York Class and has no interests antagonistic to the class. Plaintiff is represented by attorneys who are experienced and competent in both class litigation and employment litigation.

222. A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The damages sustained by individual class members are small,

compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

223. Further, the Class Representative and the New York Class have been equally affected by Defendants' failure to pay the minimum wage pursuant to the NYLL. Moreover, members of the New York Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

224. Defendants have acted or refused to act on grounds generally applicable to the New York Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class was a whole.

225. Plaintiff's claims are typical of those of the class. The Class Representative and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the non-payment of the minimum wage and the failure to keep adequate records. The job duties of the Class Representative are typical of those of the class members.

226. The Class Representative intends to send notice to all members of the New York Class to the extent required by Rule 23.

**CLASSWIDE FACTUAL ALLEGATIONS**

227. Plaintiff and the members of the FLSA Collective and New York Class (collectively "Class Members") have been victims of Defendants' common policy and plan that has violated their rights under the FLSA and NYLL by denying them overtime compensation. At all times relevant, Defendants' unlawful policy and pattern or practice has been willful.

228. Upon information and belief, Defendants have a policy and pattern or practice of paying Plaintiff and Class Members less than the hourly minimum wage.

229. Defendants require Plaintiff and Class Members to share a percentage of their gross sales with Expos.

230. Expos spend almost all of their time working in or near the kitchen area and rarely interact with restaurant customers.

231. Expos do not customarily and regularly receive tips from customers.

232. The Corporate Defendants' website describes the Expo position to potential job applicants as follows:

> As the go-between for the Guest and the kitchen, you will be expected to fix any orders that do not adhere to the Red Robin standard or recipe. You need to be willing to wear different hats and help prepare food when the kitchen is extremely busy, also check the flow of the tickets and make sure the orders match what's on the plates.[9]

233. Defendants also failed to provide Plaintiff and Class Members with adequate notice of their payment of a reduced minimum wage.

234. Further, Defendants required Plaintiff and Class Members to spend a substantial amount of time performing non-tip producing side work, such as cleaning, preparing food, refilling condiments, and stocking and replenishing the bar and food stations.

235. Defendants required Plaintiff and Class Members to perform substantial amounts of side work at the start and end of every shift.

236. As a result, Plaintiff and Class Members spent more than 20 percent of their work time engaged in side work duties.

237. Defendants have been or should have been aware that the FLSA and NYLL required Defendants to pay Plaintiff and Class Members at least the hourly minimum wage for all hours worked.

---

[9] Red Robin Expo Jobs, http://redrobin.jobs/jobs/expo/ (last accessed Dec. 28, 2015).

238. Defendants have been or should have been aware that the FLSA and NYLL prohibited Defendants from paying Plaintiff and Class Members less than the hourly minimum wage while also requiring Plaintiff and Class Members to distribute a portion of their tips to the Expos.

239. Defendants have been or should have been aware that the FLSA and NYLL prohibited Defendants from paying Plaintiff and Class Members less than the hourly minimum wage while also requiring Plaintiff and Class Members to perform substantial amounts of non-tipped sie work.

240. Defendants' failure to pay Plaintiff and the Class Members the minimum wage was willful, intentional, and in bad faith.

241. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy that violates the FLSA and NYLL. Defendants' policy and pattern or practice includes but is not limited to:

a. Willfully failing to keep payroll records as required by the FLSA and NYLL;

b. Willfully failing to pay their employees, including Plaintiff and Class Members, the hourly minimum wage for hours that they worked for each workweek;

c. Willfully requiring Plaintiff and Class Members to distribute a portion of their tipped income to employees that do not customarily and regularly receive tips from customers;

d. Willfully requiring Plaintiff and Class Members to complete side work, in excess of 20 percent of their work time; and

e. Willfully failing to provide adequate notice of their payment of a reduced minimum wage to Plaintiff and the New York Class.

242. Defendants' unlawful conduct has been widespread, repeated, and consistent.

## PLAINTIFF'S FACTUAL ALLEGATIONS

***Plaintiff Cassandra Brackley***

243. Cassandra Brackley was an employee of Defendants, working under their direct supervision.

244. Cassandra Brackley was employed by Defendants from in or about November 2011 until in or about August 2015 as a Tipped Employee, specifically a Server.

245. Defendants employed Cassandra Brackley at the Latham Restaurant from in or about November 2011 until in or about spring of 2014.

246. The Corporate Defendants employed Cassandra Brackley at the Latham Restaurant from in or about spring of 2014 until in or about August 2015.

247. As a Tipped Employee, Cassandra Brackley's duties included waiting on and serving customers, cleaning the restaurant, stocking supplies, and other side work.

248. Customers regularly tipped Cassandra Brackley.

249. Throughout her employment with Defendants, Defendants required Cassandra Brackley to contribute a portion of her tips to Defendants' Expos.

250. Defendants required Cassandra Brackley to spend at least 20 percent of her shift performing side work unrelated to her duties as a Tipped Employee. This work included sweeping and mopping floors, wiping down picture frames, cleaning the legs of the tables, restocking ice, cutting lemons, cleaning the refrigerator, breaking down and cleaning the kitchen stations, putting away dishes and glasses, washing dishes and glasses, making ice tea and coffee, rolling silverware, and covering the to-go order counter.

251. At all times hereinafter mentioned, Cassandra Brackley was required to be paid at hourly minimum wage.

252. Throughout Cassandra Brackley's employment with Defendants, Defendants paid her less than the hourly minimum wage.

253. Defendants failed to adequately inform Cassandra Brackley of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to her wages.

254. Defendants frequently required Cassandra Brackley to perform unpaid, off-the-clock work.

255. For instance, Defendants required Cassandra Brackley to arrive before her the restaurant opened at 11:00 am – e.g., 10:00 or 10:30 am – to perform side work. Defendants, however, also instructed Cassandra Brackley to not punch in until 11:00 am.

256. Defendants often required Cassandra Brackley to punch out for meal breaks while still requiring her to serve tables while clocked out.

257. Defendants often instructed Cassandra Brackley to punch out shortly after she finished serving tables but required her to continue performing side work off the clock.

258. Defendants only compensated Cassandra Brackley for the hours that she was punched in.

259. As a result, Defendants did not compensate Cassandra Brackley for this time, including overtime hours.

260. In the three years prior to the filling of the Complaint (the "FLSA Period"), Cassandra Brackley worked more than 50 or 60 hours for Defendants in most of the workweeks Cassandra Brackley was employed by Defendants.

261. Throughout most workweeks in which Cassandra Brackley was employed by Defendants in the FLSA Period, Defendants failed to compensate Cassandra Brackley for all

hours worked in excess of 40 hours per week at a rate of at least one and one-half times her regular hourly rate.

262. In the six years prior to the filing of the Complaint (the "NYLL Period"), Cassandra Brackley worked more than 50 or 60 hours per week for Defendants in most of the workweeks Cassandra Brackley was employed by Defendants.

263. Throughout most workweeks in which Cassandra Brackley was employed by Defendants in the NYLL Period, Defendants failed to compensate Cassandra Brackley for all hours worked in excess of 40 hours per week at a rate of at least one and one-half times her hourly regular rate.

264. Defendants required Cassandra Brackley to pay for uniform shirts bearing the Red Robin logo, aprons, and notepads to take food and drink orders.

265. Upon information and belief, Defendants did not keep accurate records of hours worked by Cassandra Brackley.

266. Upon information and belief, Defendants did not keep accurate records of the tips that Cassandra Brackley earned but redistributed to the Expos.

267. Defendants failed to furnish Cassandra Brackley with accurate statements of wages listing all hours worked.

**AS AND FOR A FIRST CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF AND THE FLSA COLLECTIVE**
**FOR FAILURE TO PAY THE MINIMUM WAGE**
**AN FLSA VIOLATION**

268. Plaintiff, on behalf of herself and the FLSA Collective, realleges and incorporates by reference all allegations in all preceding paragraphs.

269. Plaintiff and the members of the FLSA Collective are non-exempt employees entitled to be paid the minimum wage for all overtime hours worked.

270. Defendants employed Plaintiff and the members of the FLSA Collective and willfully failed to compensate them for the time worked at or above the minimum wage, as required by the FLSA, 29 U.S.C. § 201, *et seq*.

271. Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under FLSA, 29 U.S.C. § 201, *et seq*., because Defendants failed to inform Plaintiff and members of the FLSA Collective of the provisions of subsection 203(m) of the FLSA, distributed a portion of Plaintiff's and members of the FLSA Collective's tips to workers who do not "customarily and regularly" receive tips, and required Plaintiff and members of the FLSA Collective to perform substantial amounts of side work.

272. Defendants' violations of the FLSA, as described in this Class and Collective Action Complaint, have been willful and intentional.

273. Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiff and the FLSA Collective.

274. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

275. Plaintiff has expressed her consent to make these claims against Defendants by filing a written consent forms, pursuant to 29 U.S.C. § 216(b).

276. As a consequence of the willful underpayment of wages, alleged above, Plaintiff and the members of the FLSA Collective have incurred damages thereby and the Defendants are indebted to them in the amount of the unpaid minimum wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**AS AND FOR A SECOND CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF AND THE NEW YORK CLASS**
**FOR FAILURE TO THE MINIMUM WAGE**
**A NYLL VIOLATION**

277. Plaintiff, on behalf of herself and the New York Class, realleges and incorporates by reference all allegations in all preceding paragraphs.

278. Defendants employed Plaintiff and the members of the New York Class and willfully failed to compensate Plaintiff and the members of the New York Class for the time worked at or above the minimum wage, as required by the NYLL.

279. By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, *et seq.*; 12 N.Y.C.R.R. § 146-1.1, *et seq*.

280. Defendants have a policy and practice of refusing to pay the minimum wage to Plaintiff and the members of the New York Class.

281. Defendants were not eligible to avail themselves of the New York tipped minimum wage rate because Defendants failed to inform Plaintiff and members of the New York Class of the tip credit, distributed a portion of Plaintiff's and members of the FLSA Collective's tips to works who were not eligible to share in tips, and required Plaintiff and members of the FLSA Collective to spend over 20 percent of their work time performing side work.

282. Defendants' failure to pay the minimum wage to Plaintiff and the members of the New York Class was willful within the meaning of N.Y. Lab. Law § 663.

283. As a consequence of the willful underpayment of wages, alleged above, Plaintiff and the members of the New York Class have incurred damages thereby and the Defendants are indebted to them in the amount of the unpaid minimum wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF AND THE NEW YORK CLASS**
**FOR TIP MISAPPROPRIATION**
**A NYLL VIOLATION**

284. Plaintiff, on behalf of herself and the Spread of Hours Class, realleges and incorporates by reference all allegations in all preceding paragraphs.

285. Respondent unlawfully demanded, directed, or indirectly, part of the gratuities received by Claimant and members of the New York Class be shared with employees other than Servers, bartenders, or other similar employees, in violation of N.Y. Lab. Law § 196-d and the supporting New York State Department of Labor regulations.

286. Defendants have a policy and practice of unlawfully demanding, directed, or indirectly, part of the gratuities received by Claimant and members of the New York Class be shared with employees other than Servers, bartenders, or other similar employees, in violation of N.Y. Lab. Law § 196-d and the supporting New York State Department of Labor regulations.

287. Defendants' policy and practice was willful within the meaning of N.Y. Lab. Law § 663.

288. As a consequence of the willful misappropriation of tips, alleged above, Plaintiff and the members of the New York Class have incurred damages thereby and the Defendants are indebted to them in the amount of the unpaid gratuities, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**FOR FAILURE TO PAY OVERTIME**
**AN FLSA VIOLATION**

289. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

290. Plaintiff was a non-exempt employee and was entitled to be paid overtime compensation for all overtime hours worked.

291. Defendants employed Plaintiff for workweeks longer than 40 hours and willfully failed to compensate Plaintiff for the time worked in excess of 40 hours per week, at a rate of at least one and one-half times the regular hourly rate, in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a)(1).

292. The complete records concerning the number of hours worked by Plaintiff as well as the compensation Plaintiff received in workweeks in which excess hours were worked are in the exclusive possession and control of Defendants, and as such, Plaintiff is unable to state at this time the exact amount due and owing to her.

293. Defendants failed to keep accurate records of time worked by Plaintiff.

294. Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional.

295. Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

296. Because Defendants' violations of the FLSA have been willful, a three year statute of limitations applies, pursuant to 29 U.S.C. § 255.

297. Plaintiff has expressed her consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

298. As a consequence of the willful underpayment of wages, alleged above, Plaintiff incurred damages thereby and Defendants are indebted to her in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorney's fees, and costs in an amount to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**FOR FAILURE TO PAY OVERTIME**
**A NYLL VIOLATION**

299. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

300. Defendants employed Plaintiff for workweeks longer than 40 hours and willfully failed to compensate Plaintiff for the time worked in excess of 40 hours per week, at a rate of at least one and one-half times the regular hourly rate, in violation of the requirements of the NYLL.

301. The complete records concerning the number of hours worked by Plaintiff as well as the compensation Plaintiff received in workweeks in which excess hours were worked are in the exclusive possession and control of Defendants, and as such, Plaintiff is unable to state at this time the exact amount due and owing to her.

302. Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

303. By the course of conduct set forth above, Defendants violated N.Y. Lab. Law § 650, *et seq.*; 12 N.Y.C.R.R. § 146-1.4 *et seq*.

304. Defendants' failure to pay overtime compensation to Plaintiff was willful within the meaning of N.Y. Lab. Law § 663.

305. As a consequence of the willful underpayment of wages, alleged above, Plaintiff incurred damages thereby and Defendants are indebted to her in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorney's fees, and costs in an amount to be determined at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**FOR FAILURE TO PAY NON-OVERTIME WAGES**
**A NYLL VIOLATION**

306. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

307. Plaintiff was entitled to her regular hourly wage for each hour she worked for Defendants up to and including 40 per week.

308. Defendants employed Plaintiff as Servers and willfully failed to compensate Plaintiff at her regular hourly rate for off-the-clock work up to and including 40 hours per week, in violation of the requirements of the NYLL, specifically N.Y. Lab. Law § 661(3).

309. The complete records concerning the number of hours worked by Plaintiff as well as the compensation Plaintiff received in workweeks in which unpaid hours were worked are in the exclusive possession and control of Defendants, and as such, Plaintiff is unable to state at this time the exact amount due and owing to her.

310. Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

311. By the course of conduct set forth above, Defendants violated N.Y. Lab. Law § 650, *et seq.*

312. Defendants had a policy and practice of refusing to compensate Plaintiff for off-the-clock work.

313. Defendants' failure to pay compensation to Plaintiff was willful within the meaning of N.Y. Lab. Law § 663.

314. As a consequence of the willful underpayment of wages, alleged above, Plaintiff incurred damages thereby and Defendants are indebted to her in the amount of the unpaid wages

and such other legal and equitable relief due to Defendants' unlawful and willful conduct, as the Court deems just and proper.

315. Plaintiff seeks recovery of liquidated damages, interest, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

**AS AND FOR THE SEVENTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**FOR VIOLATION OF NOTICE AND RECORD-KEEPING REQUIREMENTS**
**A NYLL VIOLATION**

316. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

317. Defendants knowingly, willfully, and intentionally violated N.Y. Lab. Law § 193 when Defendants required Plaintiff to purchase notepads, uniform shirts, and aprons for Defendants' benefit, this policy constituted an unlawful reduction of Plaintiff's wages.

318. Defendants knowingly, willfully, and intentionally violated N.Y. Lab. Law § 193 when Defendants withheld a portion of Plaintiff's wages to pay for uniform shirts and aprons solely for Defendants' benefit, this policy constituted an unlawful reduction of Plaintiff's wages.

319. As a consequence of the willful underpayment of wages, alleged above, Plaintiff incurred damages thereby and Defendants are indebted to her in the amount of the deducted wages and such other legal and equitable relief due to Defendants' unlawful and willful conduct, as the Court deems just and proper.

320. Plaintiff seeks recovery of liquidated damages, interest, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

**AS AND FOR THE EIGHTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**FOR VIOLATION OF NOTICE AND RECORD-KEEPING REQUIREMENTS**
**A NYLL VIOLATION**

321. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

322. Defendants failed to supply Plaintiff with an accurate statement of wages as required by N.Y. Lab. Law § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

323. Due to Defendants' violations of N.Y. Lab. Law § 195, for each workweek that Defendant to provide a proper wage statement from April 9, 2011 through February 26, 2015, Plaintiff is entitled to damages of $100, or a total of $2,500, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

324. Due to Defendants' violations of N.Y. Lab. Law § 195, for each day that Defendant to provide a proper wage statement from February 27, 2015 through the present, Plaintiff is entitled to damages of $250, or a total of $5,000, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, seek the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, were employed by Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C. Designation of Plaintiff Cassandra Brackley as representative of the Rule 23 Class, and counsel of record as Class Counsel;

D. Unpaid minimum wage pursuant to the FLSA and the supporting United States Department of Labor regulations;

E. Unpaid minimum wage pursuant to the NYLL and the supporting Minimum Wage Orders;

F. Misappropriated tips pursuant to the NYLL and the supporting Minimum Wage Orders;

G. Liquidated damages relating to lost wages, as provided for by FLSA § 216(b) and the NYLL;

H. Pre-judgment interest and post-judgment interest as provided by law;

I. Issuance of a declaratory judgment that the practices complained of in this action are unlawful under N.Y. Lab. Law § 190, *et seq*.;

J. An injunction requiring Defendants to cease the unlawful activity described herein pursuant to N.Y. Lab. Law § 190, *et seq*.;

K. Reasonable incentive awards for the Class Representative to compensate her for the time she spent attempting to recover wages for the Class and for the risks she took in doing so;

L. Attorneys' fees and costs of the action; and

M. Such other injunctive and equitable relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff also seeks the following relief:

A. Unpaid overtime wages pursuant to the FLSA and the supporting United States Department of Labor regulations;

B. Unpaid overtimes wage pursuant to the NYLL and the supporting Minimum Wage Orders;

C. Unpaid non-overtime wages pursuant to the NYLL;

D. Unpaid wages that were unlawfully deducted, reduced, and withheld pursuant to the NYLL and the supporting Minimum Wage Orders;

E. Statutory damages for Defendants failure to provide Plaintiff with accurate wage statements pursuant to N.Y. Lab. Law § 198;

F. Liquidated damages relating to lost wages, as provided for by FLSA § 216(b) and the NYLL;

G. Pre-judgment interest and post-judgment interest as provided by law;

H. Issuance of a declaratory judgment that the practices complained of in this action are unlawful under N.Y. Lab. Law § 190, *et seq*.;

I. Attorneys' fees and costs of the action; and

J. Such other injunctive and equitable relief as this Court shall deem just and proper.

Dated: Melville, New York
January 20, 2016

Your, etc.,

SHULMAN KESSLER LLP

By: *___/s/ Troy L. Kessler___*
Troy L. Kessler
Marijana Matura
Garrett Kaske
*Attorneys for Plaintiff and the Putative FLSA Collective and New York Class*
534 Broadhollow Road, Suite 275
Melville, New York 11747
(631) 499-9100